FILED
2021 May-07  AM 08:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARCI LEWIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **v.** | ) | |
| | ) | |
| **ADVANCE STORES** | ) | |
| **COMPANY, INCORPORATED,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** Plaintiff, Marci Lewis (hereinafter referred to as "Ms. Lewis" or "Plaintiff"), by and through her undersigned counsel of record, and files this Complaint against Defendant, Advance Stores Company, Incorporated (hereinafter referred to as "Advance Auto" or "Defendant"). As grounds for this Complaint, Plaintiff states as follows:

### JURISDICTION AND VENUE

1.     This is a suit authorized and brought to secure protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of Congress known as the "Civil Rights Act of 1964," codified at 42 U.S.C. § 2000e *et*

1

*seq.*, as amended by the "Pregnancy Discrimination Act of 1978" (hereinafter referred to as "Title VII").

2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

3. The venue of this action is properly placed in the Northern District of Alabama pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims accrued in Jefferson County, Alabama.

## ADMINISTRATIVE EXHAUSTION

4. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") against Advance Auto. That Charge, Charge number 420-2019-03659 (hereinafter referred to as the "Charge"), alleged sex and pregnancy discrimination, and was filed on or about September 17, 2019. (Exhibit A).

5. On February 2, 2021, the EEOC issued a Notice of Suit Rights (hereinafter referred to as "RTS Notice") with respect to the Charge.

6. Plaintiff received the RTS Notice on February 5, 2021. (Exhibit B).

7. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the RTS Notice for the Charge.

8. Plaintiff has thus exhausted all administrative remedies available prior to filing the Complaint.

## PARTIES

9.    Plaintiff is a citizen of the United States of America, over the age of nineteen (19) years, and is a resident of Jefferson County, Alabama.

10.    Plaintiff was, at all times relevant, an "employee" of Defendant within the meaning of 42 U.S.C. § 2000e(f).

11.    Defendant is an auto parts store, with a branch location in Jefferson County, Alabama, whose address is 301 Fieldstone Road, Gardendale, Alabama, 35071.

12.    Defendant does business in the state of Alabama and is an "employer" within the meaning of Title VII in that it engages in an industry affecting commerce, and has employed more than the requisite number of people for the requisite duration of time, pursuant to 42 U.S.C. § 2000e(b).

13.    Defendant was Plaintiff's employer during all times relevant to this Complaint.

14.    The actions that are the basis of this Complaint occurred at Advance's Gardendale, Alabama location.

## FACTUAL ALLEGATIONS

15.    Plaintiff is a woman.

16.    In 2008, Defendant hired Plaintiff as a Retail Associate at its Fort Payne, Alabama location.

17.    In 2011, Plaintiff requested and was approved to transfer to Defendant's Gardendale, Alabama, location as a Retail Associate.

18.    At that time, Ms. Kari Witham ("Ms. Witham") was the Gardendale Store Manager, and Mr. Ben Harbour ("Mr. Harbour") was the District Manager over the Gardendale store.

19.    In 2015, Ms. Witham promoted Plaintiff to an Assistant Store Manager in the Gardendale store.

20.    Throughout her employment, Plaintiff satisfactorily performed the Assistant Store Manager responsibilities and duties, often handling Store Manager duties.

21.    While Ms. Witham was Store Manager, Mr. Harbour instructed Ms. Witham to "stop hiring women" because she "already had enough" women working there.

22.    During that same conversation, Mr. Harbour stated, "you cannot hire anymore girls or the entire store will be female."

23.    Mr. Harbour made these comments to Ms. Witham after she hired a woman to work in the store.

24.    In or around November 2018, Ms. Witham announced her resignation from the Gardendale Store Manager position.

25. At that time, Plaintiff expressed her interest in the Store Manager position to Ms. Witham.

26. Plaintiff asked Ms. Witham if she believed Plaintiff was qualified for the Store Manager position; Ms. Witham responded affirmatively and stated that she would suggest Plaintiff's name to Mr. Harbour.

27. Upon information and belief, it was understood by other Gardendale employees that Plaintiff would be the next Store Manager of the store as she knew the customers, internal systems, and had worked directly under Ms. Witham for multiple years.

28. In or around January 2019, Ms. Witham vacated the Gardendale Store Manager position.

29. At this time, Plaintiff was approximately seven (7) months pregnant.

30. Plaintiff expressed her interest in the vacant Store Manager position to Mr. Harbour.

31. However, the position was never formally posted for Plaintiff to apply.

32. Mr. Harbour did not consider Plaintiff for the Store Manager position, even though during discussions about the position with Plaintiff he acknowledged Plaintiff's strong performance as an Assistant Store Manager.

33.    Instead, in or around January 2019, Mr. Harbour brought in Mr. Brian Ferguson ("Mr. Ferguson"), a Store Manager, from Defendant's Pell City, Alabama, store.

34.    Upon information and belief, Mr. Harbour did not require that Mr. Ferguson apply for the Gardendale Store Manager position; Mr. Harbour simply shifted Mr. Ferguson from his role in the Pell City Store, to the Store Manager position in the Gardendale Store.

35.    Mr. Ferguson had less than one (1) year of experience with the company at that time.

36.    Additionally, upon information and belief, Defendant disciplined Mr. Ferguson at his former location, which was allegedly why he was transferred to Gardendale.

37.    Mr. Harbour knew about these performance deficiencies, and yet selected him for the Gardendale Store Manager position over Plaintiff anyway.

38.    Mr. Harbour described Mr. Ferguson's transfer as his "second chance."

39.    Once at the Gardendale Store, Mr. Ferguson did not satisfactorily perform his Store Manager duties.

40.    As the Store Manager, Mr. Ferguson mishandled money, neglected to complete internal paperwork, refused to work the computer system, and regularly left the store while on the clock.

6

41.     Plaintiff reported Mr. Ferguson's performance errors to Mr. Harbour.

42.     Mr. Harbour responded that Plaintiff needed to look after him and correct any mistakes that arose.

43.     Mr. Harbour even assigned Plaintiff many of the Store Manager responsibilities after just denying Plaintiff the opportunity to be considered for the role.

44.     At the time of the Store Manager vacancy, Plaintiff had not received any performance related issues and satisfactorily performed the duties of the Assistant Store Manager. She was more qualified that Mr. Ferguson to be Store Manager of the Gardendale store.

45.     Mr. Harbour did not consider Plaintiff for the Store Manager position because she was a pregnant woman, and instead handed the opportunity to a notably less-qualified man.

46.     In or around early April 2019, Plaintiff was scheduled to take maternity leave.

47.     Approximately one (1) week prior to Plaintiff's scheduled leave, upon information and belief, Defendant terminated Mr. Ferguson for poor performance.

48.     Plaintiff took maternity leave from in or around April 2019 through in or around June 2019.

7

49. Plaintiff again expressed her interest in becoming Store Manager to Mr. Harbour, and made it apparent to him that she was qualified for the position.

50. Like the time before, Mr. Harbour refused to consider Plaintiff, despite her being the most qualified candidate for the position.

51. Instead, Mr. Harbour placed Mr. Jimmy Lawson ("Mr. Lawson") in the Gardendale Store Manager position while Plaintiff was on maternity leave.

52. In selecting Mr. Lawson for the Gardendale Store Manager position, Defendant demoted Mr. Lawson.

53. Upon information and belief, Defendant demoted Mr. Lawson for performance related issues.

54. Rather than select Plaintiff, the most qualified candidate, who happened to be a woman and mother, Defendant intentionally selected a man with noted performance deficiencies.

55. Mr. Lawson was not qualified to be the Store Manager of the Gardendale Store, and the store suffered while Plaintiff was away on maternity leave.

56. As evidence of the same, Mr. Lawson resigned shortly after Defendant demoted him to the Store Manager position. Plaintiff was still on maternity leave when Mr. Lawson resigned.

57.    The Store Manager position was still open when Plaintiff returned from maternity leave in or around early June 2019.

58.    At that time, Mr. Harbour instructed Plaintiff to cover the Store Manager responsibilities until the position was filled.

59.    Despite the change in responsibilities, Defendant did not adjust Plaintiff's pay or make her the Store Manager.

60.    Mr. Harbour plainly trusted Plaintiff, and thought enough of her abilities, to act as the Store Manager when one of his previous hires proved unqualified, but refused to find Plaintiff, a woman, suitable to officially manage the Gardendale store.

61.    Upon information and belief, other employees understood that Plaintiff would, and should, become the Gardendale Store Manager.

62.    For a third time in under a year, Plaintiff expressed her interest to Mr. Harbour in becoming the Store Manager for the Gardendale Store.

63.    Mr. Harbour replied, "you'll have to apply", even though Mr. Harbour had previously hired Mr. Ferguson and Mr. Lawson without requiring an official application from either of the two (2) men.

64.    In June 2019, Plaintiff applied and was interviewed for the position.

65.    Plaintiff continued as the acting Store Manager for six (6) weeks, until Defendant hired another less-qualified man.

66.    In July 2019, Defendant hired Derrick Veal ("Mr. Veal") as the Store Manager.

67.    Upon information and belief, a new Store Manager trains alongside a veteran Store Manager prior to taking over a store. However, instead of requiring Mr. Veal to train with another Store Manager, Mr. Harbour instructed Plaintiff to "train up" Mr. Veal on the Store Manager role.

68.    Defendant recognized that Plaintiff was qualified to be a Store Manager, yet continuously refused to formally place her in the role.

69.    While Mr. Veal had previous management experience, he did not have the requisite tenure, knowledge, or experience with the company for the Store Manager position.

70.    As of July 2019, Plaintiff had served as both the Assistant Store Manager and Store Manager for Defendant for a collective four (4) years. The same was not true of Mr. Veal.

71.    Defendant intentionally ignored Plaintiff's superior qualifications each time it selected the men over her because she was pregnant and/or a woman.

72.    Plaintiff's qualifications for the Store Manager position were obvious to those around her, including other employees in the Gardendale store.

73.    Plaintiff worked under Mr. Veal from in or around July 2019 until in or around October 2019, when Plaintiff left the company to pursue another opportunity.

74. Defendant's decision not to promote Plaintiff to the Store Manager position on multiple occasions was motivated by both her sex and pregnancy.

## COUNT I- SEX (PREGNANCY) DISCRIMINATION IN VIOLATION OF TITLE VII

75. Plaintiff re-alleges and incorporates by reference paragraphs four (4) through eight (8) and fifteen (15) through seventy-four (74) above with the same force and effects as if fully set out in specific detail herein below.

76. Plaintiff is a member of a protected class under Title VII in that she is a woman, and was pregnant during her employment with Defendant.

77. At all times relevant to this cause of action, Plaintiff was qualified to perform the job duties of a Store Manager.

78. In January 2019, the Gardendale Store Manager position became available. At that time, Plaintiff served as the store's Assistant Store Manager.

79. Plaintiff was seven (7) months pregnant at the time of the vacancy.

80. Plaintiff expressed her interest in the Store Manager position to the former Store Manager, Ms. Witham.

81. Based on her eight (8) years working with Plaintiff, Ms. Witham believed she was qualified for the Store Manager position and recommended her for the same to Mr. Harbour.

82. Despite Plaintiff's superior qualifications for the job, Mr. Harbour selected a less qualified male, Mr. Ferguson.

83. Mr. Ferguson transferred to the Gardendale store from Defendant's Pell City store, after dealing with performance issues at the latter.

84. Mr. Harbour described Mr. Ferguson's transfer to Plaintiff as his "second chance," meaning he had to prove himself to stay with the company.

85. Defendant knowingly selected a man with performance deficiencies over Plaintiff, who had no prior performance deficiencies.

86. As Store Manager, Mr. Ferguson mishandled money, failed to complete required paperwork, and refused to learn the computer system.

87. Rather than select Plaintiff, who was more than qualified for the Store Manager position, Mr. Harbour asked Plaintiff to watch out for Mr. Ferguson and correct any work-related errors.

88. Plaintiff took maternity leave in or around early April 2019.

89. One (1) week prior to Plaintiff taking leave, upon information and belief, Defendant terminated Mr. Ferguson for poor performance.

90. At that time, Plaintiff expressed her interest in the Store Manager position.

91. Rather than wait for Plaintiff to return from leave, Mr. Harbour demoted a less qualified male employee, Mr. Lawson.

92.   Upon information and belief, in April 2019, Defendant demoted Mr. Lawson for performance related issues, and yet still selected him over Plaintiff, a qualified woman.

93.   Yet again, Defendant selected a less-qualified man.

94.   As evidence of Mr. Lawson's lack of qualification, he quit less than one (1) month later, in May 2019, while Plaintiff was still on leave.

95.   Upon Plaintiff's return from leave, Mr. Harbour instructed Plaintiff to step in as the acting Store Manager.

96.   Defendant did not adjust Plaintiff's wages or officially promote her to Store Manager.

97.   Plaintiff again expressed her interest in permanently filling the position.

98.   Mr. Harbour replied, "you'll have to apply."

99.   In June 2019, Plaintiff applied and was interviewed for the position.

100.   However, despite Plaintiff's qualification and six (6) weeks filing in as the interim Store Manager, Mr. Harbour selected another less qualified male, Mr. Veal.

101.   As with the other men, Plaintiff possessed more relevant work experience, training, and tenure with the company.

102.   Mr. Harbour instructed Plaintiff to "train up" Mr. Veal for the Store Manager position, despite not picking her to fill the same.

13

103.   Defendant's training procedure typically required a new Store Manager to train with a veteran Store Manager.

104.   Thus, Defendant viewed Plaintiff as a Store Manager, but yet refused to formally promote her to the same.

105.   Defendant's decision not to promote Plaintiff to Store Manager was motivated by the fact that she was a pregnant woman.

106.   Defendant led Plaintiff to believe that she was qualified and would ultimately be selected as a Store Manager, yet Defendant consistently selected men who were objectively less qualified than Plaintiff.

107.   Defendant's termination of Plaintiff was motivated by her pregnancy.

108.   As a result of Defendant's conduct, Plaintiff was deprived of income, and subjected to mental, emotional, and physical distress, pain, and suffering.

## COUNT II- SEX DISCRIMINATION IN VIOLATION OF TITLE VII

109.   Plaintiff re-alleges and incorporates by reference paragraphs four (4) through eight (8) and fifteen (15) through seventy-four (74) above with the same force and effects as if fully set out in specific detail herein below.

110.   Plaintiff is a member of a protected class under Title VII in that she is a woman.

111.   At all times relevant to this cause of action, Plaintiff was qualified to perform the job duties of a Store Manager.

112.  From 2011 through 2018, Plaintiff worked under Ms. Witham.

113.  Ms. Witham hired women to work in the Gardendale, Alabama store.

114.  Ms. Witham also promoted women within the store, including Plaintiff in 2015 to an Assistant Manager position.

115.  After hiring another woman for the store, Mr. Harbour instructed Ms. Witham to stop hiring women because she already "had enough."

116.  In the same conversation, Mr. Harbour stated, "you cannot keep hiring girls or the whole store will be female."

117.  In January 2019, the Gardendale Store Manager position became available.

118.  Plaintiff was seven (7) months pregnant at the time of the vacancy.

119.  Plaintiff expressed her interest in the Store Manager position to Ms. Witham.

120.  After working with Plaintiff for eight (8) years, Ms. Witham believed she was qualified for the Store Manager position and recommended her for the same to Mr. Harbour.

121.  Ignoring Ms. Witham's sound recommendation, Mr. Harbour selected a less qualified male, Mr. Ferguson.

122. Defendant transferred Mr. Ferguson from its Pell City store to the Gardendale Store after Mr. Ferguson ran into some performance issues at his previous store.

123. Mr. Harbour described Mr. Ferguson's transfer to Plaintiff as his "second chance" with the company.

124. Defendant admittedly selected a man with performance deficiencies over Plaintiff, who had no prior performance related deficiencies.

125. As Store Manager, Mr. Ferguson mishandled money, failed to complete required paperwork, and refused to learn the computer system.

126. Rather than select Plaintiff, who was more than qualified for the position, Mr. Harbour asked Plaintiff to watch out for Mr. Ferguson and correct any work-related errors.

127. Plaintiff took maternity leave in or around early April 2019.

128. One (1) week prior to Plaintiff taking leave, upon information and belief, Defendant terminated Mr. Ferguson for poor performance.

129. Upon Mr. Feguson's termination, Plaintiff expressed her interest in the Store Manager position.

130. Defendant chose not to wait for Plaintiff's return from maternity leave, and instead selected Mr. Lawson, a less qualified man, to fill the Store Manager position.

16

131. Upon information and belief, in April 2019, Defendant demoted Mr. Lawson for performance related issues, and yet still selected him over Plaintiff, a qualified woman.

132. As evidence of Mr. Lawson's lack of qualification, he quit less than one (1) month later, in May 2019, while Plaintiff was still on maternity leave.

133. Upon Plaintiff's return from leave in June 2019, Mr. Harbour instructed Plaintiff to step in as the acting Store Manager.

134. Defendant did not adjust Plaintiff's wages or officially promote her to the Store Manager position.

135. In June 2019, Plaintiff expressed her interest in permanently filling the position for a third time.

136. Mr. Harbour replied, "you'll have to apply."

137. In June 2019, Plaintiff applied and was interviewed for the position.

138. However, despite Plaintiff's qualification and six (6) weeks filing in as the interim Store Manager, Mr. Harbour selected another less qualified male, Mr. Veal.

139. As with the other men, Plaintiff possessed superior qualifications than Mr. Veal as she more relevant work experience, training, and tenure with the company.

140. Mr. Harbour instructed Plaintiff to "train up" Mr. Veal for the Store Manager position, despite not picking her to fill the same.

141. Defendant's training procedure typically required a new Store Manager to train with a veteran Store Manager.

142. Defendant viewed Plaintiff as a Store Manager, but yet refused to formally promote her to the same.

143. Defendant's decision not to promote Plaintiff to Store Manager was motivated by the fact that she was a woman.

144. Defendant led Plaintiff to believe that she was qualified and would ultimately be selected as a Store Manager, yet Defendant consistently selected men that were objectively less qualified than Plaintiff.

145. Defendant's termination of Plaintiff was motivated by her sex.

146. As a result of Defendant's conduct, Plaintiff was deprived of income, and subjected to mental, emotional, and physical distress, pain, and suffering.

WHEREFORE premises considered, Plaintiff demands judgment against the Defendant for lost wages, compensatory damages, punitive damages, consequential damages, incidental damages, the costs of this action, interest, attorneys' fees, and any other, further, and different relief to which she may be entitled.

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.

Respectfully submitted,

*/s/ Joshua A. Wrady*
Joshua Wrady (ASB-9617-J68W)
Courtney Crampton (ASB-3685-J61X)
*Attorneys for Plaintiff*

**WRADY MICHEL & KING**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Joshua@wmalabamalaw.com
Courtney@wmalabamalaw.com
Tel:   (205)980-5704
Fax:   (205)994-2819

**DEFENDANT TO BE SERVED MY PROCESS SERVER AT THE FOLLOWING ADDRESS:**

Advance Stores Company, Incorporated
c/o r/a National Registered Agents Inc.
2 North Jackson Street Suite 605
Montgomery, Alabama 36104